UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
REBECA SINGER,

                               Plaintiff,

v.

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,

                              Defendant.
----------------------------------------------------------X

**<u>OPINION & ORDER</u>**

21-CV-08450 (PMH)

PHILIP M. HALPERN, United States District Judge:

Rebeca Singer ("Plaintiff") commenced this action against Massachusetts Mutual Life Insurance Company ("Defendant") on September 3, 2021 in New York State Supreme Court, County of Rockland, pressing three claims for relief: two for breach of contract and one alleging a violation of New York Insurance Law § 3211. (Doc. 1-1, "Compl."). Defendant removed the action to this Court on October 13, 2021 (Doc. 1) and filed an answer on October 20, 2021 (Doc. 4). After the close of discovery, and following a pre-motion conference, the Court granted each of the parties leave to move for summary judgment and set a briefing schedule for the cross-motions. (June 28, 2022 Min. Entry).

Presently pending before the Court are the parties' motions for summary judgment under Federal Rule of Civil Procedure 56. (Doc. 20, "56.1 Stmt."; Doc. 25; Doc. 26, "Pl. Br."; Doc. 22, "Def. Br."; Doc. 23, "Pl. Reply"; Doc. 24, "Def. Reply").[1]

---

[1] The parties' motions failed to comply with Rule 7.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules"). Local Rule 7.1(a)(1) provides that "[a] notice of motion . . . shall specify the applicable rules or statutes pursuant to which the motion is brought, and shall specify the relief sought by the motion." Plaintiff's notice of motion is captioned "Notice of Motion for Summary Judgment" but seeks "an order pursuant to Rule 34 of the Federal Rules of Civil Procedure . . . ." (Doc. 25). Defendant's notice of motion seeks an order granting summary judgment in its favor "determining: (i) the life insurance policy insuring the life of Israel Singer was properly terminated due to nonpayment of premium under New York law, [and] (ii) Plaintiff is not entitled

For the reasons set forth below, Defendant's motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED.

## **BACKGROUND**

The facts recited below are taken from the Complaint, the parties' joint Local Rule 56.1 Statement with responses, and the documents submitted by the parties. Unless otherwise indicated, the facts cited herein are undisputed.

On March 31, 2017, Defendant issued a Renewable Term Life Insurance Policy, policy number 24343312 (the "Policy"), which provided a death benefit of $300,000 and insured the life of Plaintiff's husband, Israel Singer (the "Insured"). (56.1 Stmt. ¶¶ 1, 3). Plaintiff was listed as the Policy's intended primary beneficiary. (*Id*. ¶ 2).

The Policy defines premiums as "payments needed to keep [the] policy in force." (*Id*. ¶ 12). The Insured was permitted, under the Policy, to elect an annual, semi-annual, quarterly, or monthly premium frequency. (*Id*. ¶¶ 4, 7). The corresponding premiums were $1,260.00 once a year under the annual premium frequency; $644.74 twice a year under the semi-annual premium frequency; $326.22 four times a year under the quarterly premium frequency; and $109.63 twelve

---

to any death benefits or damages under the policy . . . ." (Doc. 22). That notice fails to identify whether Defendant seeks summary judgment dismissing the Complaint, or on one or more of the affirmative defenses asserted in its answer. Additionally, Local Rule 7.1(a)(3) provides that "[e]xcept for letter-motions as permitted by Local Rule 7.1(d) or as otherwise permitted by the Court, all motions shall include the following motion papers . . . [s]upporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion." All of the exhibits submitted to the Court on these motions are annexed to the parties' Local Rule 56.1 Statement, and do not include a supporting affidavit. Failure to comply with the Local Rules is, on its own, a sufficient ground to warrant denial of a motion. *See, e.g., U.S. Bank Tr., N.A. v. Monroe*, No. 15-CV-01480, 2017 WL 923326, at *6 (N.D.N.Y. Mar. 8, 2017) ("The Court may deny a motion because of the moving party's failure to comply with the Local Rules." (collecting cases)). However, the Court has discretion to overlook a failure to comply with Local Rule 7.1 and exercises such discretion on these motions. *See, e.g., Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001); *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 155 (E.D.N.Y. 2016). The Court will consider that Plaintiff seeks summary judgment on all of her claims for relief and that Defendant seeks summary judgment dismissing the Complaint for failure to state a claim and/or generally reasons set forth in its first six affirmative defenses relating to defenses under the terms of the Policy.

times a year under the monthly premium frequency. (*Id*.; *id*. ¶ 12). When the Insured procured the Policy, he elected a semi-annual premium frequency, requiring premium payments in the amount of $644.74 twice a year. (*Id*. ¶ 4). Once an insured selects a premium payment option, the Policy terms set forth two permitted methods to modify the frequency of payments: "The frequency of payments may be changed by giving [Defendant] advance written notice. A change may also be made as of any premium due date, without notice, by making a one time payment equal to the amount needed to keep the policy in force until the due date of the next premium for the elected frequency." (*Id*. ¶ 12). The Insured never changed his election to maintain the Policy under the semi-annual premium frequency. (*Id*. ¶ 5).

From April 2017 to July 2019, the Insured remitted semi-annual payments in the amount of $644.74 for premiums due in either June or December of the relevant year. (*Id*. ¶ 8). The last premium received by Defendant for the Policy was processed on July 15, 2019 in the amount of $644.74 and no further premium payments were received by Defendant in any amount after July 15, 2019. (*Id*. ¶ 11).

On November 11, 2019, Defendant issued a Notice of Payment Due to the Insured. (*Id*. ¶ 13). The November 11th Notice indicates general information concerning the Policy, including that billing frequency was semi-annual; that the premium due date was December 10, 2019; that the amount due was $644.74; that the premium was payable via Defendant's website online or via mail addressed to Defendant in Pennsylvania; and that "[t]he premium amount due must be paid by the due date or within the 31 day grace period thereafter. . . . If the amount(s) are not paid by the designated time the policy will lapse . . . ." (Doc. 20-4). Pursuant to the terms of the Policy, "if a premium is not paid within 31 days after its due date" the Policy "will no longer be in force and the insurance will terminate." (56.1 Stmt. ¶ 20). Although the Policy remains in force during that

3

31-day grace period, "[i]f a premium is not paid by the end of this grace period, the policy will Lapse as of the premium due date." (*Id*. ¶ 21). The Insured did not make any payment in any amount by the December 10, 2019 due date. (*Id*. ¶ 19).

On December 17, 2019, Defendant issued a Second Notice of Payment Due to the Insured. (*Id*. ¶ 23). The December 17th Notice, like the November 11th Notice, requested payment of $644.74 to prevent the Policy from lapsing. (*Id*. ¶ 27). The December 17th Notice likewise indicates general information concerning the Policy, including that billing frequency was semi-annual; that the premium due date was December 10, 2019; that the premium was payable via Defendant's website online or via mail addressed to Defendant in Pennsylvania; and that "[t]he premium amount due must be paid by the due date or within the 31 day grace period thereafter. . . . If the amount(s) are not paid by the designated time the policy will lapse . . . ." (Doc. 20-7).

If the Insured had submitted a payment of $326.22 (a quarterly premium frequency payment) by December 10, 2019, or before the expiration of the lapse period on January 10, 2020 (i.e., 31 days after the premium due date), Defendant would treat that payment as the Insured's notice of intent to change the Policy's premium frequency from the semi-annual schedule to a quarterly schedule and the Policy would remain in force. (*Id*. ¶ 30). The Insured, however, failed to remit any premium payment in any amount before the grace period expired on January 10, 2020. (*Id*. ¶ 37).

The Policy provides that in the event of a lapse, the Insured may seek prompt reinstatement within 31 days after the end of the grace period. (*Id*. ¶ 39). February 10, 2020 was 31 days after the end of the January 10, 2020 grace period. (*Id*. ¶ 41). At no point between January 10, 2020 through and including February 10, 2020 did the Insured seek to reinstate the Policy. (*Id*. ¶¶ 40, 42). On February 15, 2020, Defendant sent correspondence to the Insured notifying him that the

4

grace period expired and that, as of December 10, 2019, the Policy "lapsed without any value because the premium due has not been paid." (*Id*. ¶ 43).

The Insured died on April 11, 2020. (*Id*. ¶ 55). On April 13, 2020, Defendant received a telephone call from Simi Catz, who identified herself as an employee of the Insured. (*Id*. ¶ 58). Ms. Catz inquired whether the Policy was still active and stated that she received a notice of nonpayment. (*Id*.). Defendant's representative advised her that the Policy was terminated as of December 10, 2019. (*Id*.). Ms. Catz notified Defendant that the Insured had passed. (*Id*.). Subsequent to the Catz call, on April 13, 2020, Defendant received a second telephone call from an individual who identified himself as the Insured. (*Id*. ¶ 59). The caller stated that his secretary submitted payment on or around February 5, 2020 and he was seeking confirmation of the payment. (*Id*.). Defendant's representative advised the caller that it did not receive a premium payment in February of 2020 and that the Policy lapsed as of the premium due date on December 10, 2019. (*Id*.).

Defendant did not issue payment of the Policy's death benefit to Plaintiff because it contends that coverage under the Policy lapsed for non-payment of premium prior to the death of the Insured. (*Id*. ¶ 63).

This litigation followed.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No.

17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). Generally, however, if, "as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of

the opposing party, summary judgment is improper." *Oakley v. Dolan*, No. 21-2939, 2023 WL 3263618, at *2 (2d Cir. May 5, 2023) (quoting *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

## ANALYSIS

Plaintiff presses three claims for relief, alleging breach of contract for terminating the Policy notwithstanding payment of the premium; for failure to send proper lapse notices under the terms of the Policy; and the third claim under New York Insurance Law §§ 3211(a)(1) and (b) for failure to comply with the statutory notice provisions. She maintains that as a result of the allegedly defective notices and representations made to the Insured, payment was not required by the Insured, and the Policy did not lapse. Accordingly, she seeks an award of summary judgment in her favor for the face amount of the policy. Defendant contends by way of its multiple affirmative defenses that the notices complied with the terms of the Policy and New York law, and that it properly determined that the Policy lapsed without value, effective as of the date of the missed premium. The crux of its position is that no premium was paid after July 15, 2019; and that the subsequent notices it sent to the Insured before he died were in accordance with the terms of the

Policy and New York's Insurance Law. It therefore seeks an award of summary judgment in its favor dismissing this action.

I.  <u>Breaches of the Terms of the Policy: First and Second Claims for Relief</u>

Plaintiff's first claim for relief sounds in breach of contract, alleging that the Insured made all necessary premium payments to Defendant, the Policy did not lapse prior to the Insured's death, and therefore Defendant breached the terms of the Policy by denying Plaintiff's claim for death benefits. (Compl. ¶¶ 13-22). Neither party appears to have specifically addressed this claim for relief in isolation in their briefing on the motions. Rather, each side seeks the ultimate relief sought by the claim or defense associated with the Policy contract.

"Under New York law, a breach of contract claim requires (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Westcon Grp., Inc. v. CCC Techs., Inc.*, No. 19-CV-02303, 2022 WL 4134578, at *5 (S.D.N.Y. Sept. 12, 2022). Pursuant to the terms of the Policy, a policyowner must remit their currently elected scheduled premium payment to maintain the policy, unless and until they change their premium frequency. (Doc. 20-1 at 18 ("Each subsequent premium is due when the period covered by the preceding premium ends."); *id*. at 19 ("Premiums may be paid once a year (annually), twice a year (semiannually), four times a year (quarterly), or twelve times a year (monthly) as shown in the Policy Specifications.")). To change the frequency of payments, policyowners must affirmatively request the change to Defendant or submit a payment in the amount of a lower premium frequency as set forth in the Policy's specifications. (*Id*. at 19 ("The frequency of payments may be changed by giving us advance written notice. A change may also be made as of any premium due date, without notice, by making a one time payment equal to the amount needed to keep the policy in force until the due date of the next premium for the elected

frequency."); *id.* at 38, 39)). Defendant contends that the Policy lapsed without value pursuant to its terms because the undisputed facts establish that the Insured elected a semi-annual payment frequency (56.1 Stmt. ¶ 4); that he failed to pay the semi-annual premium due on December 10, 2019 (*id.* ¶¶ 11, 37); that he failed to remit any premium payment in any amount before the grace period expired on January 10, 2020 (*id.* ¶ 37); and that he failed seek to reinstate the Policy before the reinstatement period ended on February 10, 2020 (*id.* ¶¶ 39-42). The parties dispute whether the Insured changed or attempted to change the modal frequency selected from semi-annual to quarterly, but do not dispute that no premium payment was made after July 15, 2019.

Plaintiff argues that the Insured requested to change his premium frequency schedule in January 2018 by telephone call to Defendant, and that Defendant lied to the Insured and told him that he was not permitted to pay the quarterly premium instead of the semi-annual premium due. Plaintiff, in support of that argument, reproduced what appears to be a transcript of that call in her memorandum of law in opposition to Defendant's motion and in further support of her motion. (Pl. Reply at 6-10). That unsworn, purported transcription of a phone call is unauthenticated and therefore disregarded on the instant motions for summary judgment. *See Perkins v. Memorial Sloane–Kettering Cancer Ctr.*, 02-CV-06493, 2005 WL 2453078, at *15 (S.D.N.Y. Sept. 30, 2005) (collecting cases) (disregarding transcripts of unauthenticated voicemail messages for purposes of a summary judgment motion); *Rivera v. Choice Courier Sys., Inc.*, 01-CV-02096, 2004 WL 1444852, at *6 (S.D.N.Y. June 25, 2004) (same).[2]

---

[2] Even if the Court were to consider this purported transcript—which it does not—the content of the transcript does not support the argument advanced by Plaintiff. The Insured, in that January 2018 phone call to Defendant, inquired as to whether he could pay half of his semi-annual premium that was due in December 2017 and then pay the other half two months later. (Pl. Reply at 6-10). The Insured was advised that he could not pay half and full payment was required. (*Id.*). The Insured thereafter paid the $644.74 semi-annual premium payment and continued to submit full semi-annual premium payments until July 2019. (56.1 Stmt. ¶ 54). The Policy is unambiguous that a policyowner cannot pay any "half" or some other arbitrary amount of money to keep the Policy in force. (Doc. 20-1 at 18-19, 38-39). Accordingly, even if

Accordingly, there is no genuine dispute that the Insured's premium modal frequency was semi-annual and that he did not change that frequency. Likewise, there is no issue of fact that the Insured failed to pay the premium due after July 15, 2019 and, for that reason, the Policy lapsed.

Plaintiff further argues in her second and third claims for relief that because the notices sent by Defendant failed to comply with the terms of the Policy and New York law, they were rendered null and void, no premium payment was required, and the Policy therefore did not lapse. For the reasons explained *infra*, the Court does not agree.[3]

II.    Violation of New York Insurance Law § 3211(a)(1): Third Claim for Relief

Plaintiff's third claim for relief alleges that Defendant failed to send notices to the Insured in compliance with New York Insurance Law § 3211. The Court assumes, without deciding, that Plaintiff may bring a claim for relief pursuant to § 3211. That law provides that no life-insurance policy may:

> terminate or lapse by reason of default in payment of any premium
> . . . unless, for scheduled premium policies, a notice shall have been
> duly mailed at least fifteen and not more than forty-five days prior
> to the day when such payment becomes due.

---

this phone call was admissible, no reasonable juror could possibly conclude that it served to change the premium frequency due to keep the Policy in force.

[3] Plaintiff's second claim for relief sounds in breach of contract, alleging deficiencies in the notices sent to the Insured based upon the requirements of New York Insurance Law § 3211. Specifically, Plaintiff alleges that Defendant failed to send proper notice that the Policy was going to enter a grace period or that it was going to lapse; failed to send notices within the time frame required by the Policy; and failed to send notices that state the date when payment was due and the payment necessary to keep the Policy in force. (Compl. ¶¶ 23-35). Neither party appears to have addressed this claim for relief specifically in their briefing on the motions. Based upon the Court's independent review of the record evidence, however, the Policy simply does not contain any provisions requiring that notices be sent to the insured or concerning the content or timing of any notices concerning the grace period or lapse. The Policy contains a single reference to "premium notice" which is set forth in a section describing the place where premiums under the Policy are payable. (Doc. 20-1 at 19). To the extent that the provisions of the New York Insurance Law concerning the timing and content of the notices are incorporated into the Policy where the Policy is silent, *see, e.g., Lebovits v. PHL Variable Ins. Co.*, 199 F. Supp. 3d 678, 681 (E.D.N.Y. 2016), this claim fails for the same reasons as Plaintiff's third claim for relief for violation of the New York Insurance Law.

10

N.Y. Ins. Law § 3211(a)(1). Such a grace period notice "must state: (1) the amount of payment owed; (2) the date when payment is due; (3) the place where and the person to whom payment can be made; and (4) that, without such payment, the policy will terminate or lapse." *Stein v. Am. Gen. Life Ins. Co.*, 665 F. App'x 73, 76 (2d Cir. 2016) (citing N.Y. Ins. Law § 3211(b)(2)). "Although forfeiture of life insurance coverage for late payment of premiums is not favored in the law, these notice requirements should not be construed as creating a 'trap' for either the insurer or the insured." *Id*. (cleaned up). "Thus, minor variations from the statutory notice requirements of § 3211 will not automatically render a grace period notice noncompliant." *Id*. at 76-77.

It is undisputed that the notice sent by Defendant to the Insured on December 17, 2019 was at least fifteen days before and not more than forty-five days prior to the expiration of the grace period as required by New York Insurance Law § 3211(a)(1). (56.1 Stmt. ¶ 26). Plaintiff takes issue not with the timing but with the content of that notice, arguing that the December 17th Notice failed to properly set forth the amount of payment owed and the date when payment was due.

With respect to the requirement that a grace notice list the amount due, Plaintiff argues that the December 17th Notice requested payment of $644.74 but because that amount was not the lowest premium amount needed to keep the Policy from terminating, it rendered the grace notice invalid. Plaintiff's argument rests upon distinguishable case law and conflation of two distinct scenarios: the fixed premium payment due based upon the premium modal frequency selected by the Insured, and a method of changing the premium modal frequency going forward by submitting a different amount.

Plaintiff contends that to be valid, the December 17th Notice should have demanded only $326.22 (i.e., the quarterly premium frequency payment). That amount, she contends, is the minimum necessary to keep the policy in force, citing *Lebovits v. PHL Variable Ins. Co.*, 199 F.

Supp. 3d 678 (E.D.N.Y. 2016), *Weiss v. Lincoln Nat'l Life Ins. Co.*, No. 14-CV-04944, 2016 WL 4991533 (E.D.N.Y. Sept. 15, 2016), *Halberstam as Tr. of Zupnick Fam. Tr. 2008 B v. Allianz Life Ins. Co. of N. Am.*, 349 F. Supp. 3d 164 (E.D.N.Y. 2018), *Zeligfeld v. Phoenix Life Ins. Co.*, 975 N.Y.S.2d 370, 2013 WL 1688902 (Sup. Ct. April 17, 2013), *Blumenberg v. Aviva Life & Annuity Co. of New York*, 977 N.Y.S.2d 665, 2013 WL 5496144 (Sup. Ct. Oct. 1, 2013), as well as other out-of-circuit cases.[4] The *Lebovits*, *Weiss*, *Halberstam*, *Zeligfeld* and *Blumenberg* courts each held that an insurer's grace notice must *correctly* state the amount of payment due in order to comply with New York Insurance Law § 3211(b)(2), explaining that a demand for payment of an amount significantly higher than that actually required is ineffective to cancel the policy. 199 F. Supp. 3d at 680 (notice that that misstated the premium due would be invalid, "as long as the misstatement was not de minimis"); 2016 WL 4991533, at *4 ("Unlike a notice that includes only a minor error or an obvious typographical error in the premium amount due, a notice with a significantly higher amount due than actually required is ineffective to cancel the policy." (alterations and internal quotation marks omitted)); 349 F. Supp. 3d at 170 ("Because an additional month's premium is not de minimis, the grace notice was legally invalid, and thus the policy did not lapse . . ."); 2013 WL 1688902, at *5-6 ("[W]here . . . the premium amount listed as due in the notice is significantly higher than the amount actually required, . . . . such a notice would not be effective to cancel the policy . . ."); 2013 WL 5496144, at *5-6 ("The lapse notice, on its face, thus apparently overstates the amount of premium required to be paid to avoid a lapse under the statute.").

The *Lebovits*, *Weiss*, *Halberstam*, *Zeligfeld*, and *Blumenberg* courts were all confronted with language in the respective policies that described a method for the calculation of the premiums due. Those policies required the insurer to determine the account value needed to maintain

---

[4] The Court notes that Plaintiff's counsel herein represented the plaintiffs in each of the cited cases.

sufficient funds for premium deductions, which led to the insurers subjectively overcharging premiums due. They were all flexible premium policies, which are unlike the fixed premium policy at issue in this case. Indeed, those types of policies are even distinguished from fixed premium term life insurance policies in the New York Insurance Law. *See, e.g.,* N.Y. Ins. Law §§ 3203(a)(1), (a)(8)(A), and (a)(8)(I); *id.* § 3211(a)(1). The term life insurance Policy in this case operates pursuant to a fixed premium frequency schedule which is set forth clearly and unambiguously in the Policy and its specifications. The flexible premium policies at issue in *Lebovits*, *Weiss*, *Halberstam*, *Zeligfeld*, and *Blumenberg* simply do not operate according to the same premium frequency schedule that the Policy at issue does. Plaintiff has not cited any case concerning a fixed premium life insurance policy like the one at issue here where a court invalidated a grace notice on the grounds that it did not state a lower, different payment frequency amount than that elected by the insured.[5]

The December 17th Notice advised Plaintiff of the amount due under the fixed premium frequency that the Insured elected: the semi-annual frequency. It is undisputed that the Insured could have remitted payment in the amount of $326.22 in the grace period which would have changed the premium modal frequency from semi-annual to quarterly, and would have served to keep the Policy from lapsing. (56.1 Stmt. ¶ 30). It is also undisputed, however, that Plaintiff did not make any payment in any amount. (*Id.* ¶¶ 11, 19, 37).  Accordingly, the amount stated in the

---

[5] One of the out-of-circuit cases cited by Plaintiff addresses a fixed premium life insurance policy. *Estate of Blakely v Fed. Kemper Life Assur. Co.*, 640 N.E.2d 961 (Ill. App. Ct. 1994). That case, however, is unlike the instant case. Although the insurer's notice correctly noted that a quarterly payment was due, the premium frequency elected by the insured, it stated the amount due was $337.38 when the policy specifications unambiguously stated quarterly payments were to be $292.40. That is not the situation presented here, where the premium payment notices requested $644.74, the exact amount corresponding to the semi-annual premium frequency in the Policy specifications, which the Insured elected.

December 17th Notice correctly set forth the fixed premium payment that was due on December 10, 2019.

Plaintiff argues, with respect to the requirement that a grace notice must list the date when payment is due, that the December 17th Notice identifies how many days remain to make payment instead of a specific date. The December 17th Notice, however, specifically states that the date due is December 10, 2019. (Doc. 20-7).  The Notice goes on to explain that "[t]he premium amount due must be paid by the due date or within the 31 day grace period thereafter. . . . If the amount(s) are not paid by the designated time the policy will lapse . . . ." (*Id*.). The Appellate Division, Second Department, recently held that a notice which contained substantially similar language[6] to that at issue here complied with New York Insurance Law § 3211. *Cohen v. Companion Life Ins. Co.*, 113 N.Y.S.3d 897 (App. Div. 2020). The only cases cited by Plaintiff, which were decided in 1915, 1918, and 1935, respectively, do not compel a different conclusion.[7]  The date and grace period stated in Defendant's Notices correctly set forth the date when payment was due in compliance with New York Insurance Law § 3211(b)(1).

---

[6] The premium notice in that case stated, in relevant part: "Unless each premium billed on this Notice is paid on or before the due date or within the grace period, each policy on which the premium is not paid will lapse and all payments thereon will become forfeit except as otherwise stated in the contract. . . ." (See Index No. 000891/2016, NYSCEF Doc. No. 48). The due date of the premium was stated on the previous page of the notice.

[7] Those courts held notices invalid that did not warn the insured that the policy would lapse if premium were not paid on or before the due date or within a specified number of grace period days thereafter. *See Flint v. Provident Life & Tr. Co. of Philadelphia*, 109 N.E. 248, 257 (N.Y. 1915) ("The notice in the present case is defective because it fails to state that the policy will become forfeited if payment of the premium is not made 'by or before the day it falls due.' It does tell when the premium is due; it also says that if the premium is not paid the policy and all payments thereon will become forfeited and void; but it does not declare that these consequences will ensue if the premium be not then paid or be not paid 'by or before' that day."); *McDonald v. Aetna Life Ins. Co.*, 169 N.Y.S. 762, 763 (App. Div. 1918) (acceptable language in notice would be "that the policy would be forfeited unless payment was made within 31 days after the due date . . . ."); *Brown v. Travelers Ins. Co.*, 288 N.Y.S. 822, 824 (City Ct. 1935) (notice stating that policy would become void after one month because of default in payments, but not stating amount of premium due nor interest on policy loan nor place of payment, was insufficient).

Accordingly, Plaintiff has not established that she is entitled to summary judgment as a matter of fact and law on any of her claims for relief; and Defendant has established its entitlement to summary judgment on its first, third, fifth, and sixth affirmative defenses, dismissing the Complaint.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff's motion for summary judgment (Doc. 25) is DENIED. Defendant's motion for summary judgment (Doc. 22) is GRANTED.

The Clerk of Court is respectfully requested to terminate the pending motion (Doc. 25) and close this case.

Dated: White Plains, New York
      May 16, 2023

SO ORDERED:

_____
Philip M. Halpern
United States District Judge